**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TV TOKYO CORPORATION, | **FILED UNDER SEAL** |
| Plaintiff, | Civil Action No. 26-cv-3065 |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | |
| Defendants. | |

**COMPLAINT**

Plaintiff TV Tokyo Corporation ("Plaintiff" or "TV Tokyo"), by and through its undersigned counsel, hereby files this Complaint against the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A hereto (collectively, "Defendants") and alleges as follows:

### I.      Introduction

1.      This is a trademark infringement action against foreign-based online sellers who are engaged in active infringement of Plaintiff's valuable trademark. Because the infringement is ongoing and the resulting damages and difficult to compute with a degree of precision, Plaintiff seeks immediate relief from the Court.

### II.      Jurisdiction and Venue

2.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

1

3.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a), and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) since each of the Defendants directly targets consumers in the United States, including New York, through at least the fully interactive commercial internet stores operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

4.     This Court may exercise personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A), which permits service under New York's long-arm statute, C.P.L.R. § 302(a)(1) and § 302(a)(3)(i) and (ii), or alternatively pursuant to Fed. R. Civ. P. 4(k)(2), because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District, derive substantial revenue from business transactions in New York and in this Judicial District, and otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants is consistent with due process and does not offend traditional notions of fair play and substantial justice.

5.     In addition, Defendants' illegal counterfeiting and infringement actions caused injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this judicial District.

6.     For example, Defendants' Seller Aliases accept orders of counterfeit and infringing products from and offer to ship to New York addresses located in this Judicial District.

[REMOVED FROM PUBLIC DOCKET]

7.    Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York and in this Judicial District, through accounts (the "User Account(s)") with online payment processor platforms such as PayPal and Shop Pay, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, communicate with Defendants regarding their listings for counterfeit products, and place orders for, receive invoices for and purchase counterfeit products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

8.    In the process of investigating the individual Defendants and their respective Seller Aliases, Plaintiff determined that none of the defendant entities identified in Schedule A to this Complaint, all of whom are believed to be located in Hong Kong or Mainland China, provide a physical address that can be relied upon purposes of service of process.

9.    Plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process for each of the Defendants identified in Schedule A and was unsuccessful in doing so.

10.    Plaintiff's search for a physical address for each of the Defendants was based upon the information provided on the Defendants' respective websites and by searching Baidu.com, one of the most popular search engines in China, in an attempt to verify whatever information was provided.

11.   Few, if any, of the Defendants provided a complete and accurate physical address on their respective e-commerce store sites. When complete addresses were provided, further investigation revealed that such addresses were not located in an area where any business potentially linked to the Defendants could reasonably be located.

12.   Because Plaintiff conducted a reasonably diligent search for a physical address where each Defendant could be served with process but was unsuccessful in discovering reliable information, Defendant's addresses are "unknown" and the requirements of the Hague Service Convention do not apply, thus permitting Plaintiff to achieve service by alternate means authorized by the Court, including service by email.

## III.   Parties

13.   Plaintiff TV Tokyo Corporation is a leading Japanese content producer and broadcaster of movies and videos with a particular strength in animation. TV Tokyo is a corporation duly organized and existing in good standing under the laws of Japan, with its principal place of business at Roppongi Grand Tower, 3-2-1 Roppongi, Minato-ku, Tokyo 106-8007, Japan. TV Tokyo has standing to pursue this action in the Southern District of New York in defense of its intellectual property interests on grounds including, but not limited to, 15 U.S.C. § 1114.

14.   This action has been filed to combat online trademark infringers who trade upon Plaintiff's reputation, goodwill, and valuable intellectual property by selling and/or offering for sale counterfeit and infringing products in connection with the federally registered BLEACH Trademark, Registration No. 3,645,027, for use in International Classes 9, 16, 25, 28, and 41 (the "BLEACH Trademark"):

| Trademark | Registration No. | Goods and Services |
|---|---|---|
| BLEACH | 3645027 | For: Pre-recorded motion picture films and television programs featuring animated performances recorded on video and audio discs,   and DVDs; pre-recorded video and audio |

| Trademark | Registration No. | Goods and Services |
|---|---|---|
| | | discs, and DVDs, all featuring music and animated performances; pre-recorded video and audio discs, DVDs featuring games; video game software; interactive video game programs; software for playing video games; interactive entertainment software for playing video games in Class 009. |
| | | For: Publications, namely, graphic novels, fiction books, comic books, art books, coffee table books relating to art, comics, animation and entertainment; school and office supplies, namely, calendars, gift books, notebooks, posters, stationary and stationery type portfolios; trading cards; art prints; collectible cards in Class 016. |
| | | For: Men's, women's and children's clothing, namely, shirts, t-shirts, sweatshirts; footwear, namely, shoes, sneakers, athletic shoes; tennis wear, namely, wristbands; outerwear, namely, jackets, gloves; headwear, namely, hats, caps; masquerade costumes, masquerade costumes with masks sold in connection therewith in Class 025. |
| | | For: Toys and sporting goods, namely, play figures and accessories therefore, toy figures, toy statuettes and toy figurines made of molded plastic, dolls and accessories therefor, plush toys, stuffed toys, playing cards in Class 028. |
| | | For: Entertainment services, namely, production and distribution of motion pictures, films, television programs, in the fields of animated entertainment; entertainment services, namely, distribution of animated audio-visual works via the Internet and television; publication of books, magazines, cartoons, comic strips and comic graphic novels, fiction books and comic books, in the fields of comics, graphic novels, and animated entertainment; production of animated entertainment, namely, motion pictures and television programs; providing comics via the Internet; providing information online regarding animated entertainment, computer games and comics in Class 041. |

15.    The BLEACH Trademark registration is valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registration constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the BLEACH Trademark pursuant to 15 U.S.C. § 1057(b).

5

16.     True and correct copies of the registration certificate for the BLEACH Trademark is attached hereto as Exhibit 1 and incorporated herein by reference.

17.     The BLEACH Trademark stems from a beloved and iconic series: Bleach (the "TV Tokyo Series"). Bleach started as a Japanese manga-style comic series created and illustrated by renowned artist Tite Kubo. The Bleach manga series of comics has sold over 130 million copies, making it one of the top selling manga of all time. Due to its overwhelming popularity, the Bleach series was later turned into an animated television series and associated movies. Bleach has been translated into English and is widely popular in the United States in both its comic book and moving picture forms.

18.     TV Tokyo co-produced and distributes the animated television series and theatrical films of the Bleach franchise together with the manga series publisher and registered owner of the BLEACH Trademark, Kabushiki Kaisha Shueisha Corp. ("Shueisha"). TV Tokyo has obtained from Shueisha all necessary rights, licenses, and authority to enforce the TV Tokyo Trademark and pursue this action.

19.     TV Tokyo is the exclusive licensee of the BLEACH Trademark with the exclusive right to produce and distribute BLEACH-branded merchandise and the exclusive right and authorization to enforce the BLEACH Trademark in the United States.

20.     The Bleach Series brand of products, distributed and/or licensed by Plaintiff TV Tokyo, has expanded beyond the manga series and audiovisual properties to cover a variety of other areas and classes of goods, including toys, games, back-to-school items, stationery, apparel, accessories, and various household commodities, food, and beverages (collectively, the "Bleach Products"). Plaintiff, directly and through its duly authorized licensees, is the exclusive official source of Bleach Products.

6

21.     The BLEACH Trademark has been continuously used in commerce in the United States for more than five years since registration and has never been abandoned. The BLEACH trademark registration is valid, subsisting, and in full force and effect. The registration of the BLEACH Trademark constitutes prima facie evidence of its validity pursuant to 15 U.S.C. §1057(b).

22.     TV Tokyo has invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the BLEACH Trademark. As a result, products associated with the BLEACH Trademark are recognized and exclusively associated by consumers and the public as being products sourced from Plaintiff.

23.     Given its worldwide popularity and recognition as a household term, including in New York and the broader United States, the BREACH Trademark has achieved the status if famousness as that term is used in 15 U.S.C. § 1125(c).

24.     TV Tokyo has made efforts to protect its interests in and to the BLEACH Trademark. No one other than TV Tokyo and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the BLEACH Trademark without the express written permission of TV Tokyo.

25.     Upon information and belief, Defendants are individuals and business entities who reside in various foreign jurisdictions, including but not limited to China and other countries from which counterfeit goods are commonly exported to the United States. Defendants conduct business throughout the United States, including within New York and in this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing

versions of the Bleach Products to consumers within the United States, including New York and in this Judicial District.

## IV. Factual Background

26.     Prior to the proliferation of anonymous online marketplaces, Plaintiff successfully enforced its intellectual property rights against identifiable infringers and counterfeiters through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made traditional enforcement actions challenging. Plaintiff has attempted to utilize takedown procedures to remove infringing BLEACH Products, but such efforts have proven inadequate and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is occurring over the Internet and the reality that new infringing listings now appear as quickly as others are removed.

27.     The aggregated effect of the mass counterfeiting that is taking place has overwhelmed Plaintiff and its ability to police its rights against the hundreds of anonymous defendants that are selling illegal counterfeit and infringing products at prices below the cost of an original, authentic Bleach Product:

### PLAINTIFF'S OFFICIALLY LICENSED PRODUCT



https://store.crunchyroll.com/products/bleach-ichigo-soul-reaper-fleece-hoodie-BHAH2681CY.html

**COUNTERFEIT/INFRINGING LISTINGS**

[REMOVED FROM PUBLIC DOCKET]

28.     The above examples evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authorized products.

29.     In an effort to illegally profit from the creative content of the BLEACH Trademark, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authorized Bleach Products.

30.     Plaintiff has suffered and continues to suffer immediate and irreparable harm through loss of control over its valuable intellectual property, diminution of reputation and

9

goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

31.    The systematic and coordinated mass counterfeiting and infringement campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiff and its ability to police and effectively enforce its rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit and infringing products.

32.    To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As a recent Homeland Security report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network.[1]

33.    The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

34.    In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic.[2]

35.    Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of store names by the Seller Aliases that employ abnormal business nomenclature and, instead, have the appearance of being fictitious or randomly generated, or if a company name that appears to be legitimate is used, investigation reveals that there is no verifiable business address or legitimate business entity associated with such name. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by appearing to sell genuine Bleach Products, while knowingly selling unauthorized, inferior counterfeit imitations of Plaintiff's Bleach Products that illegally utilize the BLEACH Trademark ("Infringing Products").

36.    Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 3.

---

[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

37.     The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

38.     The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

39.     The Seller Aliases intentionally conceal their identities and the full scope of their counterfeiting and infringement operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

40.     Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Seller Alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

41.    In addition to operating under multiple fictitious names, online infringers like Defendants in this case systematically employ a variety of sophisticated tactics specifically designed to evade detection and circumvent intellectual property enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

42.    A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods through carriers such as Federal Express, DHL and UPS.[3] and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments, that is, shipments valued at $800 or less. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2. *Id.*

43.    Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal, LLC ("PayPal") accounts, strategically concealed behind layers of payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiff's legitimate enforcement efforts.

44.    Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal accounts to these offshore accounts

---

[3] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

45.    Defendants, without any authorization or license from Plaintiff, have knowingly, willfully, and deliberately counterfeited and infringed Plaintiff's BLEACH Mark in connection with the systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this judicial district of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

### Count I - Trademark Infringement and Counterfeiting
**(15 U.S.C. § 1114)**

46.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

47.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered BLEACH Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The BLEACH Trademark is distinctive. Due to TV Tokyo's substantial and continuous investment in quality control, brand management, and product development, consumers have come to expect, rely upon, and associate the highest quality exclusively with TV Tokyo and authentic Bleach Products offered, sold, or marketed under the BLEACH Trademark.

48.    Without TV Tokyo's authorization or consent, and with actual knowledge of TV Tokyo's well-known and prior rights in its BLEACH Trademark and with actual knowledge that Defendants' Infringing Products bear counterfeit marks, Defendants intentionally and willfully reproduced, copied, and/or colorably imitated the BLEACH Trademark and used spurious

14

designations that are identical with, or substantially indistinguishable from, the BLEACH Trademark on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products in interstate commerce.

49. Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the purchasing public in direct competition with TV Tokyo, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiff's exclusive rights in and to the BLEACH Trademark.

50. Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the BLEACH Trademark to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Infringing Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by Defendants originate from, are associated with, or are otherwise authorized by TV Tokyo, thereby making substantial profits and gains to which they are not entitled in law or equity.

51. Defendants' unauthorized use of the BLEACH Trademark on or in connection with the Infringing Products was done with notice and full knowledge that such use was not authorized or licensed by TV Tokyo, and with deliberate intent to unfairly benefit from and damage the

15

substantial and incalculable goodwill TV Tokyo has developed in the BLEACH Trademark through years of quality control and significant investment.

52.    Defendants' actions constitute willful counterfeiting of the BLEACH Trademark in violation of 15 U.S.C. §§ 1114(1)(a) and(b), 1116(d), and 1117(b) and (c), entitling Plaintiff to statutory damages, treble damages, and attorneys' fees.

53.    Defendants' continued, knowing, and willful use of the BLEACH Trademark without TV Tokyo's consent or authorization constitutes intentional infringement of the BLEACH Trademark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

54.    Plaintiff has no adequate remedy at law, and if Defendants' actions are not immediately enjoined, Plaintiff will continue to suffer immediate and irreparable harm to its reputation, market position, and the substantial goodwill associated with the BLEACH Trademark, causing damages that are difficult to calculate with precision.

55.    The injuries and damages sustained by Plaintiff, including but not limited to loss of sales, loss of goodwill, damage to reputation, and diminution in the value of the BLEACH Trademark, have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit Bleach Products.

### Count II - False Designation of Origin, Passing Off & Unfair Competition
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

56.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

57.    Defendants' promotion, marketing, offering for sale, and sale of infringing Bleach Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, association, or endorsement with Plaintiff or the origin,

sponsorship, or approval of Defendants' infringing products by Plaintiff, thereby violating Plaintiff's rights under 15 U.S.C. § 1125(a).

58.    By using the BLEACH Trademark in connection with the sale of unauthorized products, Defendants create and have created a false designation of origin and a false and misleading representation of fact as to the origin, sponsorship, affiliation, and approval of the unauthorized products in interstate commerce.

59.    Defendants' false designation of origin and misrepresentation of fact as to the origin, sponsorship, affiliation, and approval of the unauthorized products to the general public is a knowing and willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Plaintiff to injunctive relief, monetary damages, and attorneys' fees.

60.    Upon information and belief, Defendants' aforementioned wrongful actions have been undertaken knowingly, deliberately, and willfully, and with the specific intent to cause confusion, to cause mistake, and to deceive the purchasing public, and with the intent to trade on the goodwill and reputation of TV Tokyo, its Bleach Products, and the BLEACH Trademark for Defendants' own commercial benefit.

61.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

### Count III – Federal Trademark Dilution
**(15 U.S.C.  1125(c)/LANHAM ACT § 43(c))**

62.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

63.    Based at least on the distinctiveness of the BLEACH Trademark; the duration and extent of use of the trademark; the duration and extent of advertising featuring the trademark; the geographic area in which products and services have been sold and advertised featuring the

trademark; the nature of the trade channels used to market products and services featuring the trademark compared to the trade channels through which Defendants sell their products and services; the degree of public recognition of the BLEACH Trademark; and the federal registration of the trademark, the TV Tokyo Trademark has become famous, as that term is used in Section 43(c) of the Lanham Act, and has been famous for many years.

64.     Defendants' actions described above, all occurring after the BLEACH Trademark became famous, are likely to cause dilution of the famous BLEACH Trademark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

65.     As a direct and proximate result of Defendants' actions alleged above, Plaintiff has been damaged and will continue to be damaged.

### IV. Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the BLEACHTrademark or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized Bleach Product or is not authorized by Plaintiff to be sold in connection with the BLEACH Trademark;

   b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the BLEACH Trademark;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit and Infringing Bleach Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing the BLEACH Trademark and damaging Plaintiff's goodwill;

e.  otherwise competing unfairly with Plaintiff in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the BLEACH Trademark;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the BLEACH Trademark;

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)  Entry of an Order that, upon Plaintiff's request and proper notice, those in privity with Defendants and those with actual notice of the injunction, including any online marketplaces, social media platforms (including but not limited to Facebook, YouTube, LinkedIn, and Twitter), internet search engines (such as Google, Bing, and Yahoo), web hosts, domain name registrars, and online marketplace account registrars, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff, which bear the BLEACH Trademark, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff, which bear the BLEACH Trademark; and

c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4)    That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that Plaintiff be awarded enhanced damages pursuant to 15 U.S.C. § 1117(a) in an amount up to three times the actual damages, if the court finds this to be an exceptional case;

5)    In the alternative, that Plaintiff be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

6)    That Plaintiff be awarded its reasonable attorneys' fees and costs; and

7)    Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.

Date April 15, 2026                                  Respectfully submitted,

                                                                    /s/ Shengmao Mu

20

Shengmao Mu
NY No. 5707021
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*